IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES A. PREVATT, III,

    Plaintiff,

v.

LINDA NKONGCHU, et al.,

    Defendants.

Civil Action No.: GLR-19-231

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 13), as amended (ECF No. 18).[1] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant the Motion, which it construes as a motion for summary judgment.

### I. BACKGROUND

**A. Plaintiff's Allegations**

Self-represented Plaintiff James A. Prevatt, III, a prisoner confined to Patuxent Institution, raises an Eighth Amendment claim against Defendants Chuma Ononye (referred to in the Complaint as "Nurse Chuma"), Kaitlyn Honchar (referred to in the Complaint as "Ms. Honcha"), Charles Chong Hwa Hong, Lara Akinrinade, and Linda

---

[1] Also pending is a Motion to Withdraw (ECF No. 20) filed by counsel for the Division of Correction, which shall be granted.

Nkongchu, all of whom are mental health professionals involved in his treatment.[2] (Compl. at 1–2, ECF No. 1; First Suppl. Compl. ["1st Suppl."] at 1–2, ECF No. 6). Prevatt alleges that he was taken off psychiatric medications that were helping him because "they were causing [him] bad health problems," and forced to take a different medication, which caused his symptoms to worsen. (Compl. at 2). In his Supplemental Complaint, Prevatt asserts that all of his medications were stopped by Hong and Honchar. (1st Suppl. at 2). He claims that he was put on the medication Lamictal for treatment of his mood disorder. (Id.). He also states that his diagnosis was changed. (Id.).

Prevatt states that he told Nkongchu, a nurse practitioner, that his new medication was not helping him and reported that he was experiencing paranoid thoughts, violent outbursts, thoughts of self-harm, and thoughts of harming others. (Id.). He claims that two officers at Patuxent, C.O. Smith and Lt. Goldman, called Akanrinade, whom Prevatt describes as being the head of the mental health program, and told her that Prevatt needed to be put back on the medication he was previously taking because the Lamictal was not helping him. (Id.). According to Prevatt, Smith and Goldman warned Akanrinade that Prevatt was going to lose control and either harm himself or cause harm to someone else. (Id.).

Although Prevatt recalls being advised by correctional staff that he had a right to refuse any medication offered to him, he states that when he did so, he was "punished dozens of times." (Id.). According to Prevatt, he told his mental health care providers that

---

[2] The Clerk will be directed to correct the spelling of all Defendants' names on the docket.

he would take medication other than Lamictal, but they would not listen to him and refused to help. (Id.).

Prevatt asserts that because his requests for a change to his medication were ignored, on February 19, 2019,[3] he went into his cell, tied the door shut, and stabbed himself in an effort to commit suicide. (Id. at 2–3). Prevatt states that one of the side effects of Lamictal is suicidal thoughts, yet he was put on this medication despite the fact he was admitted to Patuxent's mental health program due to his history of suicidal attempts. (Id. at 3).

**B.     Defendants' Response**

Defendants provide some background regarding Prevatt's mental health history. Hong states that Prevatt was under his care from approximately September 24, 2015 to July 16, 2019. (Hong Decl. ¶ 3, ECF No. 18-4). Defendants provide medical records indicating that on November 7, 2017, the tier psychiatrist expressed concern that Prevatt was taking Tegretol and Clozaril, "which could cause a major drug interaction of bone marrow suppression." (Misc. Med. Rs. ["Med. Rs."] at 1471, ECF No. 18-3).[4] Medical staff developed a plan to wean Prevatt off Tegretol but continue to prescribe him Clozaril. (Id.). Hong explains that he later discontinued Prevatt's prescription for Clozaril because Prevatt claimed he was experiencing side effects associated with the drug, such as fainting, constipation, proctitis, dyslipidemia, urinary retention, and an increase in abdominal adiposity. (Hong Decl. ¶ 18).

---

[3] Records submitted by Defendants indicate this incident actually occurred on February 14, 2019. (See Hong Decl. ¶ 8, ECF No. 18-4).
[4] When citing to the compilation of medical records available at ECF No. 18-3, the Court will use the Bates numbering found in the lower-right corner of the documents.

Prevatt was taking Tegretol from February 2017 to November 12, 2017, and he reported that he was "doing well" on Tegretol as it "helped with his irritability." (Med. Rs. at 1471). Prevatt received Depakote "from November 2017 to May 2018, then [he] has been given Lamictal since May 2018." (Id.). Hong states that Prevatt's psychotropic medication was switched from Depakote to Lamictal on May 4, 2018 by another psychiatrist, Dr. Haith, because Depakote had proven ineffective in stabilizing Prevatt's mood. (Hong Decl. ¶ 7). Dr. Haith chose Lamictal because it does not have the side effect of inhibiting the production of white blood cells and Prevatt had "already been taking Clozapine with that side effect."[5] (Id.).

Prevatt complained to mental health care providers on September 24, 2018, that he was experiencing "irritability and fear that he may get into trouble." (Med. Rs. at 1471). However, Prevatt remained on Lamictal from May 4, 2018 without any incidents of self-harm until the February 2019 incident. (Hong Decl. ¶ 8). In addition, Hong notes that Prevatt was "free to refuse medication as evidenced by the numerous instances documented in [Prevatt's] medical chart where he refused to take mediation." (Id. ¶ 17).

Defendants also provide records containing a 2010 description of Prevatt's psychiatric history, which was drafted when he was admitted to the Correctional Mental Health Center-Jessup ("CMHC-J"). (Med. Rs. at 224). Psychology staff at Eastern Correctional Institution ("ECI") had referred Prevatt to the CMHC-J Acute Mental Health

---

[5] Clozapine is the generic name for Clozaril. See Clozaril, WebMD, https://www.webmd.com/drugs/2/drug-5194/clozaril-oral/details (last visited June 7, 2021).

Unit "due to active psychosis and recent incidents of self-injurious behavior." (Id.). At that time, Prevatt reported that he was experiencing "command auditory hallucinations to harm himself or others, with paranoid beliefs that others were trying to hurt him." (Id.). Prevatt provided the following pertinent psychiatric and social history:

> Mr. Prevatt reported his first contact with mental health professionals at the age [of] 6, when he was started on Ritalin for ADHD. He indicated that during early adolescence he first began experiencing visual hallucinations of ghosts and shadows and command auditory hallucinations telling him to hurt himself and others. He has reported multiple incidents of past self-injurious behavior. He reported attempting suicide in early adolescence by shooting himself with a shotgun. Additionally, he stated that while at the county detention center, he bit a chunk out of his arm in response to command auditory hallucinations. He also reported a seven year stay at a state hospital in Virginia after a Not Criminally Responsible (NCR) finding . . . When interviewed by the treatment team at CMHC-J, he stated that since his transfer to ECI, where his medications were changed, he no longer experiences command auditory hallucinations. He acknowledged continued auditory hallucinations of the voice of his grandmother, who passed away in 2005, but described these experiences as comforting.

(Id. at 224–25).

On January 31, 2019, Honchar prepared a "Monthly Note" and commented that Prevatt was "housed on N4, high functioning tier, as a level 4," but that he had been decreased from level 5 to level 4 during the review period for "missing 3 doses of his psychotropic medication in a row." (Med. Rs. at 1435). Honchar further noted that:

> Mr. Prevatt continues to disengage with staff and has limited interactions with treatment staff. He is not receptive to encouragement to engage in order to work back towards a level 5. Mr. Prevatt also does not attend therapy groups or activity groups provided on the unit. He remains upset with the treatment staff for the discontinuation of his Clozaril that was

5

> causing serious medical problems for him. Given his resistance to engage with staff, this monthly note is not comprehensive. Mr. Prevatt's progress towards his treatment goals regressed some during this review due to his lack of trust in staff.

(Id.).

On February 2, 2019, Prevatt was seen by Ishaq O. Giwa, R.N., who described Prevatt as "calm and quiet" and reporting no concerns. (Med. Rs. at 1434). She also noted that he had a stable mood and congruent affect, did not verbalize any suicidal or homicidal ideations, and showed no signs of psychosis. (Id.).

On February 13, 2019, Prevatt's housing level was dropped from level 4 to a level 3, which Defendants assert occurred because Prevatt missed three consecutive doses of his psychotropic medication. (Hong Decl. ¶ 12). Prevatt was also advised that he would be moved from N4, a higher-functioning tier, to L2, a mid-functioning tier, due to his non-compliance with medication. (Id.). Hong explains that patients on a high-functioning tier may remain if they are compliant with their medication, among other requirements. (Id.). Hong does not work on the N4 tier and therefore did not participate in the decision to change Prevatt's assignment. (Id. ¶ 13). However, Hong maintains that "[l]evel and tier change is decided by the mental health treatment team based on functional and clinical status of the patient" and "is not administered for the purpose of punishing the inmate." (Id. ¶ 14).

Prevatt disputes this version of events and suggests that his housing level was changed because he was "more outspoken about the inhumane living conditions in [the] mental health building at Patuxent and constant complaining by family members to

custody" regarding the same issues. (Untitled Pl.'s Doc. ["Opp'n"] at 2, ECF No. 16).[6] Prevatt also notes a potential contradiction in Defendants' statements—if a refusal to take medication resulted in a change in his housing status, and, as Hong asserts, Prevatt had a history of refusing medication, then his housing assignment should have been changed prior to early 2019. (Id.).

As set forth above, Prevatt stabbed himself in an apparent attempt to commit suicide on February 14, 2019. Hong concluded that Prevatt's suicide attempt was not due to a side effect of his medication but was his "reaction to the change in the level and tier where he was being housed (which resulted in some lost privileges)." (Hong Decl. ¶ 10). Indeed, Prevatt's mental health history includes numerous suicide attempts prior to the incident, all of which occurred while Prevatt was "taking a variety of medications (but not Lamictal)." (Id. ¶ 9). Hong does not believe the suicide attempt that prompted this lawsuit was caused by Lamictal; rather, he attributes Prevatt's conduct to "his personality and his pattern of responding poorly to anger and frustration." (Id. ¶ 10). Hong relates the following historical background:

> [A]ccording to the Pretrial Forensic Evaluation at Thomas B. Finan Center, on February 22, 2008 at the Worchester House of Correction, [Prevatt] had a self-inflicted superficial laceration on his left forearm, and hit his head on the cell door,

---

[6] To the extent that Prevatt is attempting to add a new claim of retaliation, including such a claim in an opposition response is improper. See Whitten v. Apria Healthcare Grp., Inc., No. PWG-14-CV-3193, 2015 WL 2227928, at *6 (D.Md. May 11, 2015) ("The proper means of identifying a new basis for a claim at this juncture is a motion to amend" pursuant to Fed.R.Civ.P. 15(a).); see also Saunders v. Putnam Am. Gov't Income Fund, No. JFM-04-560, 2006 WL 1888906, at *2 (D.Md. July 7, 2006) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks and citations omitted)).

7

> because he was angry (not due to the medication). Further on February 28, 2008, [Prevatt] bit his right arm into an artery (resulting in significant loss of blood) out of anger. Again, this action was not due to a side effect of medication; rather, it was due to Plaintiff's personality, including his inability to effectively deal with his anger.

(Id.). Nevertheless, Prevatt was placed on suicide precaution that day. (Med. Rs. at 600). Suicide precaution meant that a psychiatrist and a mental health professional evaluated Prevatt daily; nurses monitored his status every fifteen minutes; and an inmate observation aid monitored Prevatt continuously. (Hong Decl. ¶ 19). Prevatt remained on suicide precaution until February 22, 2019. (Med. Rs. at 599).

Also on February 14, 2019, Hong removed Prevatt's diagnosis of schizoaffective disorder, bipolar type from Prevatt's medical records because Prevatt had not shown symptoms indicative of those disorders since his admission to Patuxent in 2011. (Id. at 1343). Hong's review of clinical observations of Prevatt during previous hospitalizations revealed no objective evidence that Prevatt was responding to auditory command hallucinations or internal stimuli. (Id.). Prevatt also did not appear to be psychotic or exhibit symptoms of mania or depression. (Id.). The absence of these symptoms was unaffected by the use or discontinued use of antipsychotic medications; "[r]ather his presentation was more consistent with a borderline personality disorder." (Id.). On February 18, 2019, Prevatt's Lamictal was discontinued and he was placed on Zyprexa, an anti-psychotic medication. (Hong Decl. ¶ 15).

On February 22, 2019, Prevatt was removed from suicide precaution and placed on "close observation." (Med. Rs. at 599). He remained on close observation until March 1,

8

2019. (Id. at 598). Under close observation, a psychiatrist or mental health professional evaluated Prevatt every other day and nurses monitored him every thirty minutes. (Hong Decl. ¶ 20).

Hong claims that on February 25, 2019, Prevatt told him that he had cut himself on February 14, 2019, because he was angry about his change in housing and loss of privileges. (Id. ¶ 11). Prevatt further told Hong that "he was not responding to an auditory hallucination and was not suicidal" when he cut himself. (Id.). Prevatt denies speaking with Hong on February 25, 2019 and states that at that time he was on suicide precaution and under the care of a Dr. Coffman. (Opp'n at 1–2).

Prevatt also disputes Defendants' assertion that he was free to refuse medications, highlighting an incident where custody staff restrained him and gave him a shot against his will at the direction of Akinrinade. (Id. at 2). He asserts that Akinrinade said he "was crazy" and that "she alone knew what was good for [him]." (Id.). Prevatt reiterates that Defendants refused to listen when he told them the medication he was taking was making him sick and warned that he was going to wind up hurting himself or someone else. (Id.).

The episode to which Prevatt appears to be referring occurred in September 2019, approximately eight months after the instant lawsuit was filed, when Prevatt received medication while restrained. (Med. Rs. at 1289). Nkongchu noted in Prevatt's medical record that medical staff administered the medication after Prevatt had an "episode of severe aggression" upon being told he was not eligible for level 4 housing. (Id.). According to the record, Prevatt "engaged in threatening, yelling, refusal to lock into cell, [was]

disruptive, [and] required emergency medications." (Id.). Prevatt was given an injection of Cogentin.[7] (Id.).

C. **Procedural Background**

The Court received Prevatt's Complaint on January 24, 2019. (ECF No. 1). Although the Complaint does not expressly identify a cause of action, it appears to articulate an Eighth Amendment claim against Defendants for wrongly taking him off psychiatric medications that he needed to regulate his mental health. (Id. at 2). Prevatt seeks monetary damages for pain and suffering and injunctive relief in the form of removing Defendants from their positions at Patuxent. (Id. at 3).

On September 18, 2020, Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. (ECF No. 13). The Court received Prevatt's Opposition on November 23, 2020. (ECF No. 16). In response to an Order from this Court concerning the organization of their exhibits, (ECF No. 17), Defendants supplemented their Motion on May 5, 2021, (ECF No. 18).

## II. DISCUSSION

A. **Standard of Review**

1. **Conversion**

Defendants style their Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. "A motion styled in this manner

---

[7] Cogentin is a brand-name of the generic drug benztropine, which is used to treat involuntary movements due to the side effects of certain psychiatric drugs. See Cogentin Tablet, WebMD, https://www.webmd.com/drugs/2/drug-13533/cogentin-oral/details (last visited June 23, 2021).

implicates the Court's discretion under Rule 12(d)[.]" Pevia v. Hogan, 443 F.Supp.3d 612, 625 (D.Md. 2020) (citation omitted). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and "a reasonable opportunity for discovery." Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013) (citation omitted). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)). The Court "does not have an obligation to notify parties of the obvious." Laughlin, 149 F.3d at 261.

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (citation omitted). Yet "the party opposing summary

11

judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To successfully raise the need for additional discovery, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor & City Council of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961). Despite these holdings, the Fourth Circuit has indicated that there are some limited circumstances in which summary judgment may be premature, notwithstanding the non-movants' failure

to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[ ] as the functional equivalent of an affidavit." Id. at 244–45 (quoting First Chi. Int'l v. United Exch. Co., 836 F.2d 1375, 1380 (D.C.Cir. 1988)).

Here, the Court concludes that both requirements for conversion are satisfied. Prevatt was on notice that the Court might resolve Defendants' Motion under Rule 56 because Defendants styled their Motion in the alternative for summary judgment and presented extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. In addition, the Clerk informed Prevatt about the Motion and the need to file an opposition. (See Rule 12/56 Letters, ECF Nos. 14, 19). Prevatt filed an Opposition but did not include a request for more time to conduct discovery. (See ECF No. 16). Because the Court will consider documents outside of Prevatt's Complaint in resolving Defendants' Motion, the Court will treat the Motion as one for summary judgment.

### 2. Summary Judgment

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers,

13

or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co., LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citations omitted). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing

14

on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.     Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976) (citation omitted); see also Hope v. Pelzer, 536 U.S. 730, 737 (2002) (citation omitted); Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (citation omitted); King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016) (citation omitted). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017). To prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); see also Anderson, 877 F.3d at 543.

Objectively, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). A serious medical condition is an illness or condition that is either life-threatening or causes an unnecessary infliction of pain when it is not treated properly. See, e.g., Brown

15

v. Harris, 240 F.3d 383, 389 (4th Cir. 2001) (finding that risk of suicide is a serious medical condition).

"Courts treat an inmate's mental health claims just as seriously as any physical health claims." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Bowring v. Godwin, 551 F.2d 44, 47 (4th Cir. 1977)). Indeed, there is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. Bowring, 551 F.2d at 47. A prisoner is entitled to such treatment if:

> [A] physician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial.

Id. The right to such treatment is based upon the essential test of medical necessity and not whether such care is considered merely desirable. Id. at 47–48.

After a serious medical need is established, a successful Eighth Amendment claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. See Farmer v. Brennan, 511 U.S. 825, 839–40 (1994); see also Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter thus becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." Brice v. Virginia

16

Beach Corr. Ctr., 58 F.3d 101, 105 (4th Cir. 1995) (internal quotation marks and citation omitted). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through other evidence that tends to establish the defendants knew about the problem. Scinto, 841 F.3d at 226. This includes evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. (quoting Makdessi v. Fields, 789 F.3d 126, 133 (4th Cir. 2015)).

In all cases, the reasonableness of a defendant's actions must be judged through the lens of the risk the defendant actually knew at the time. See Jackson, 775 F.3d at 179 (physician's act of prescribing treatment raises a fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk). "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (citation omitted). Additionally, mere negligence or malpractice does not rise to the level of a constitutional violation. Donlan v. Smith, 662 F.Supp. 352, 361 (D.Md. 1986) (citing Estelle, 429 at 106); see also Scinto, 841 F.3d at 225 ("Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" (quoting Farmer, 511 U.S. at 835) (alteration in original)); Russell v. Sheffer, 528 F.2d 318, 318 (4th Cir. 1975) ("[M]istreatment or non-treatment must be capable of characterization as 'cruel and unusual punishment' in order to present a colorable claim under §1983." (citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3d Cir. 1970))).

The undisputed facts establish that Prevatt suffers from a serious mental health condition for which he has received medication and treatment. There is no evidence, however, that Defendants exhibited a reckless disregard for Prevatt's physical and mental health when his medication was changed. Decisions about balancing the side effects of medications with their potential for benefit to the patient are typically reserved for the judgment of healthcare providers. Here, Hong determined that Prevatt was experiencing potentially harmful side effects from Clozaril. Thus, Prevatt was placed on Lamictal because of his healthcare providers' well-founded concern regarding the side effects of his existing prescription treatment. Moreover, even if Hong's decision was incorrect, it cannot form the basis for a successful Eighth Amendment claim because "an inadvertent failure to provide adequate medical care" does not amount to deliberate indifference. Estelle, 429 U.S. at 105–06; see also Anderson, 877 F.3d at 543 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986))).

Further, the record supports Defendants' assertion that the incident of self-harm that occurred on February 14, 2019, was prompted by Prevatt's angry response to the change in his housing level and privileges, not by his change in mediation. Prevatt's history of using self-harm to express his anger was well-established prior to the incident. Following the incident, Prevatt was placed on suicide precautions and later on close observation, where he was carefully monitored. His disagreement with the course of care chosen by the mental health care professionals is not a basis for a constitutional claim against them. See Wright, 766 F.2d at 849 (citing Gittlemacker, 428 F.2d at 6); accord Jackson, 775 F.3d at

178 ("[W]e consistently have found such disagreements to fall short of showing deliberate indifference.").

Finally, to the extent Prevatt alleges that Defendants violated his Eighth Amendment rights by changing his housing level, that claim must also fail. First, if Prevatt's housing level was changed due to his non-compliance with prescribed medication, that change does not amount to an unconstitutional punishment, but rather, an effort by the facility to supervise and care for its inmate population. See McKune v. Lile, 536 U.S. 24, 26 (2002) (stating that the "decision where to house inmates is at the core of prison administrators' expertise"); Veney v. Wyche, 293 F.3d 726, 734 (4th Cir. 2002) ("In formulating and executing decisions relating to cell assignments, we must allow prison authorities the discretion to take into account the particular safety and security concerns facing [the] inmates . . . ."); Slezack v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("[T]he security and custody classification of state prison inmates is a matter for state prison-official discretion whose exercise is not subject to federal procedural due process constraints.").

Even if it did constitute a punishment, "to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). An inmate making such a claim "must specifically describe not only the injury but also its relation to the allegedly unconstitutional condition." Id. at 1381 n.9. Here, Prevatt has not alleged "a serious or significant physical or emotional injury resulting from the challenged

conditions," much less raised a genuine dispute of material fact regarding the issue. For these reasons, Defendants are entitled to summary judgment in their favor on Prevatt's constitutional claims.[8]

Finally, to the extent the Complaint raises pendent state law claims of medical malpractice, this Court will decline to exercise supplemental jurisdiction over the claims and dismiss them without prejudice. See <u>Carnegie Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988) (citing <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726–27 (1966)).

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 13), as amended (ECF No. 18), which the Court construes as a motion for summary judgment, will be granted. A separate Order follows.

Entered this 23rd day of June , 2021.

    /s/
George L. Russell, III
United States District Judge

---

[8] Because the Court will deny Prevatt's Eighth Amendment claim on the merits, it need not address Defendants' qualified immunity defense.